**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| JESUS LOPEZ-PUENTES,<br><br>Plaintiff,<br><br>v.<br><br>KAYVIONNE COOK, in his individual capacity; JOSE RIVERA, in his individual capacity; and HECTOR ROSARIO, in his individual capacity,<br><br>Defendants. | CAUSE NO.: 2:23-CV-24-TLS |

**OPINION AND ORDER**

This matter arises out of Defendant East Chicago Police Officer Kayvionne Cook's use of force against the Plaintiff Jesus Lopez-Puentes while booking him at the East Chicago Police Department on January 20, 2021. Compl., ECF No. 1. Before the Court is the Defendants' Motion for Summary Judgment [ECF No. 50], filed on July 8, 2026, by Defendants Kayvionne Cook, then-Deputy Chief of Police Jose Rivera, and then-Chief of Police Hector Rosario. The Plaintiff brings federal constitutional claims under 42 U.S.C. § 1983, alleging excessive force against Defendant Cook in his individual capacity when he struck and assaulted the Plaintiff who was handcuffed and standing by the glass detention wall inside the East Chicago Police Department (Count I) and supervisory liability against Defendants Jose Rivera and Hector Rosario in their individual capacities for failing to supervise and properly train Defendant Cook (Count II). *Id.* The Defendants' Motion for Summary Judgment is fully briefed. *See* ECF Nos. 50–54, 59–61, 62. For the reasons set forth below, the Court grants in part and denies in part the Defendants' Motion for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

## MATERIAL FACTS[1]

### A. Undisputed Material Facts

On January 20, 2021, Defendant East Chicago Police Officer Kayvionne Cook responded to a domestic battery incident in progress that involved Plaintiff Jesus Lopez-Puentes and his

[1] The Plaintiff did not comply with Northern District of Indiana Local Rule 56-1(b)(2)(D), which requires that the Plaintiff's additional fact section be titled "Additional Material Facts." *See* ECF No. 60, p. 11. In addition, the Plaintiff included a "Statement of Material Facts in Dispute" in his response brief, ECF No. 61, p. 3, a procedure that is not provided for in Local Rule 56-1(b). The Defendants did not provide any

girlfriend. Ex. 1, 22:3–10, 24:1–11, 25:24–26:12, ECF No. 51-2. The Plaintiff had been drinking beer prior to the domestic incident and was tipsy but denies he was intoxicated. ECF No. 59-13, 16:13–17:9. When the officers arrived, the Plaintiff put his hands up, walked up from the basement, and was handcuffed and taken into custody. *Id.* 26:21–27:5, 28:1–3. Defendant Cook placed the Plaintiff in his patrol vehicle at 3:26 a.m. and transported him to the East Chicago Police Department. Ex. 1, 26:11–22, 91:4–7. The Plaintiff testified that Defendant Cook "kept repeating to me that he wanted me to have the same energy I had when I was beating up my girlfriend when we get to the police station." ECF No. 59-13, 31:6–15, 34:3–7.

Once at the station, Defendant Cook took the Plaintiff through the sally port into the booking area and placed him up against a wall with a glass partition. Ex. 1, 30:8–20, 31:13–15, ECF No. 59-13, 35:5–36:15, 38:3–5; video recording, ECF Nos. 53–54. Officers Jalen Morris and Stephen Schindler, who were both on duty at the jail, were present. Ex. 1, 36:1–13; ECF No. 59-11, 7:11–8:21. During the booking process, Officer Schindler appeared with a TASER and trained it on the Plaintiff while assisting Defendant Cook. Ex. 1, 95:22–96:2. Defendant Cook needed to search the Plaintiff for safety reasons before placing him in a holding cell. *Id.* 68:17–20. During the process, Defendant Cook slammed the Plaintiff's face against the glass partition and then slammed the Plaintiff on the ground. ECF No. 59-13, 39:14–17, 41:2–4; ECF No. 59-12, 93:12–18. Defendant Cook used his hands, body, the glass window, and the floor to secure the Plaintiff; he did not use his taser or a gun. Ex. 1, 97:20–98:5. Defendant Cook testified that he struck the Plaintiff for "pain compliance." ECF No. 59-12, 84:1–12. The Plaintiff was

---

reply to the Plaintiff's additional material facts, *see* N.D. Ind. L.R. 56-1(c)(2), but also did not object to the form of the Plaintiff's additional material facts and Statement of Material Facts in Dispute. In the interest of deciding the case on the merits, the Court considers all facts offered by the parties that are supported by a citation to evidence. Finally, the Plaintiff did not label his exhibits; therefore, the Court will refer to the Plaintiff's exhibits by the CM/ECF docket entry number.

knocked unconscious and sustained a broken jaw. ECF No. 59-13, 42:7–43:9; 48:1–20; ECF No. 59-4, pp. 4, 7, 8–10, 12. Officer Schindler used his TASER on the Plaintiff while the Plaintiff was on the ground. ECF No. 59-13, 44:16–45:7; ECF No. 59-10, 31:11–16. The officers present noted the Plaintiff had a busted or bleeding lip. ECF No. 59-10, 38:11–13; ECF No. 59-11, 18:9–10; ECF No. 59-12, 73:15.

Defendant Cook is six feet one inch tall and weighs 190 to 195 pounds. ECF No. 59-12, 34:4–7. The Plaintiff is five feet five inches tall and weighs 135 pounds. ECF No. 59-4, p. 7.

The Plaintiff begged the officers to provide him medical attention, and they eventually called the paramedics. ECF No. 59-13, 45:21–46:19. Superior ambulance responded to the scene and transported the Plaintiff to St. Catherine Hospital. *Id.* 46:21–47:13; ECF No. 59-3, p. 3. St. Catherine Hospital personnel noted in the Plaintiff's records bruising of the left orbital and swelling of the left jaw. ECF No. 59-4, p. 11. A CT scan report indicted a "mildly displaced acute fracture of the ramus of the mandible on the left." *Id.* p. 13. The Plaintiff left with the police after treatment, and his discharge papers and disc from radiology were given to the East Chicago Police Department. *Id.* p. 10. The Plaintiff would need follow-up medical care. *Id.* p. 9. The Plaintiff's jaw remains symptomatic to this day. ECF No. 59-13, 53:7–8.

The events in the booking area at the station were captured on the department's jail surveillance video, and the video has been filed with the Court. ECF No. 59-12, 57:15–58:10; ECF Nos. 53, 54. The East Chicago Police Department does not use body cameras or dash cameras. ECF No. 59-12, 58:11–15.

With respect to the charges stemming from the Plaintiff's arrest related to the domestic incident with his girlfriend, the Plaintiff later pleaded guilty to domestic battery by means of a deadly weapon (Level 5 Felony) in Cause No. 45G04-2101-F3-000008 and to criminal confinement (Level 6 Felony) in Cause No. 45G04-1911-F5-000475. ECF No. 59-5. The

Stipulated Factual Basis for those plea agreements describes only the Plaintiff's conduct toward his girlfriend at the residence where he was arrested on January 20, 2021, and at a Dollar General parking lot in October 2019; there are no facts related to the events at the East Chicago Police Department. *Id.* pp. 5–6. He was incarcerated for approximately eighteen months. Ex. 2, 10:24–11:3, ECF No. 51-3.

Officer Schindler testified that the State of Indiana mandates continuing education training for police officers, and he believes that the East Chicago Police Department exceeds the state guidelines. Ex. 5, 8:9–14, ECF No. 51-5. Current Chief of Police Jose Rivera testified that Defendant Cook would have received academy training on the use of force in addition to such training that is provided on an annual basis. Ex. 7, 5:21–24, 11:11–24, ECF No. 51-7. On one occasion, Chief Rivera investigated a prior claim of excessive force against Defendant Cook; the investigation concluded with the determination that Defendant Cook had acted in compliance with departmental policy. *Id.* 18:6–19:7. Defendant Hector Rosario, who was Chief of Police in January 2021, knew Defendant Cook and never had the occasion to investigate or discipline him. Ex. 8, 10:10–17, 26:17–27:2, ECF No. 51-8.

**B. Disputed Material Facts Regarding the Events Leading Up to the Use of Force**

The parties offer conflicting versions of the events immediately preceding Defendant Cook's use of force.

*1. Defendant Cook's Version*

Defendant Cook provided the following testimony. Upon his initial contact with the Plaintiff, he noticed a very strong order of alcoholic beverage and observed that the Plaintiff's eyes were watery and bloodshot red. Ex. 1, 90:6–17. While Defendant Cook was escorting the Plaintiff from the domestic incident to the patrol vehicle, the Plaintiff began to use profane and offensive language, referring to Defendant Cook as a "bitch-ass nigger." *Id.* 90:18–91:3. During

the transport, the Plaintiff continued to make offensive as well as threatening statements toward Defendant Cook. *Id.* 91:11–92:21. Defendant Cook placed a call to dispatch that he would be arriving with a combative arrestee. *Id.* 30:24–31:7. Once at the station and during booking, the Plaintiff "was being verbally combative, and he was locking up his muscles and making it difficult for [Officer Cook] to finish the booking process." *Id.* 68:11–16. Defendant Cook told the Plaintiff that the Plaintiff needed to relax his muscles, that he was going to take the cuffs off for booking purposes to search the Plaintiff, and that the Plaintiff needed to place his hands on the glass; the Plaintiff refused to do so. *Id.* 71:15–22. Defendant Cook tried to place the Plaintiff's left hand on the glass for safety to try to control him and ensure the Plaintiff did not execute the verbal threats he was making. *Id.* 74:4–9. When the Plaintiff began to turn around rather than place his hand on the glass as instructed, Defendant Cook performed a takedown maneuver to restrain the Plaintiff and to avoid a face-to-face interaction and confrontation. *Id.* 75:19–76:9 (discussing Ex. 3, video recording at 3:29:42).

Officer Schindler, a master patrolman, gave the following testimony. Ex. 5, 8:2–4. When Defendant Cook brought the Plaintiff through the sally port at the station, the Plaintiff was "using the N word a lot," "excessively yelling and swearing" at the officers, and making threats directed at Defendant Cook. *Id.* 43:2–8, 46:15–18. Defendant Cook told the Plaintiff to face the glass to have the handcuffs taken off and then to place his hand on the glass after the cuff was taken off, at which point the Plaintiff was "squirming around." *Id.* 47:1–12. Each time they gave the Plaintiff a direction or asked if he understood, he would say "fuck you or some other obscenity at us." *Id.* 47:13–15. And then once the cuffs were off, the Plaintiff "decided not to" put his hand on the glass. *Id.* 47:15–18. Officer Schindler remembers seeing the Plaintiff drop his left shoulder as if he were going to turn around and follow through with the threatened assault of Defendant Cook. *Id.* 47:19–48:3. Defendant Cook prevented the Plaintiff, who continued with

the obscenities, from turning around and then took him to the ground with both Defendant Cook and Officer Schindler telling him to put his hands behind his back and stop resisting. *Id.* 48:4–10. The Plaintiff was "actively resisting" Defendant Cook and Officer Schindler "on the ground refusing to place his hands behind his back." *Id.* 31:17–20. Officer Schindler was trying to get the Plaintiff's right arm behind him but the Plaintiff was refusing, tensing his muscles and pulling his hands away. *Id.* 48:11–17. That was when Officer Schindler delivered a stun with his TASER to the Plaintiff's back. *Id.* 31:11–16, 48:18–19.

Officer Morris provided the following testimony. The Plaintiff walked into the station yelling profanities at Defendant Cook, including racial slurs and threatening statements about killing Defendant Cook and his family. Ex. 6, 14:9–16, ECF No. 51-6. Defendant Cook was telling the Plaintiff to be quiet and stop talking. *Id.* 14:16–18. The Plaintiff was resisting when Defendant Cook took him to the ground. *Id.* 31:2–21.

*2. The Plaintiff's Version*

In contrast, the Plaintiff provided the following testimony. The Plaintiff did not use profane or offensive language with Defendant Cook when he got in the patrol car; he was not loud, threatening, or profane at any time; he did not kick the patrol car door; and he did not call Defendant Cook a "nigger" at any time in the patrol car or the station. ECF No. 59-13, 32:24–33:16, 34:8–15, 43:10–44:15. The Plaintiff did not make threatening statements to Defendant Cook either in the patrol car or at any time during the booking process at the station; rather, Defendant Cook was threatening and taunting the Plaintiff and yanking him around while he was cuffed. *Id.* 27:20–28:3, 31:6–15, 32:24–33:16, 34:2–36:20, 43:10–44:15.

The Plaintiff denies that he was moving around while Defendant Cook was trying to finish the booking process. *Id.* 38:2–7 ("I wasn't even moving a muscle. I wasn't even moving around."). The Plaintiff was not doing anything when Defendant Cook "slam my face on the

window and body slam me on the ground." *Id.* 40:11–41:5. After the Plaintiff went to the ground, Officer Cook punched him twice, once in the back of the head and once on his jaw. *Id.* 42:20–43:7. The Plaintiff was knocked unconscious for twenty to thirty seconds, which he thinks was caused by the second punch. *Id.* 41:11–42:24. An officer placed a knee on the Plaintiff's neck while he was on the ground and not moving. *Id.* 45:5–7. He insists there was no need to control him as he was not resisting and that he was unconscious on the ground. *Id.* 39:23–42:3. He was stunned with a TASER even though he was on the ground and not moving. *Id.* 44:16–45:7. At no time did he resist the officers' instruction. *Id.* 57:5–7.

## ANALYSIS

Section 1983 provides, in pertinent part, that "[e]very person who, under color of [state law], . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must show that the defendant deprived him of a federal constitutional right and that the defendant acted under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006) (citations omitted).

### A. Claims against Defendant Cook

#### *1. § 1983 Fourth Amendment Excessive Force Claim*

a) Fourth Amendment Constitutional Claim

The Plaintiff brings a § 1983 Fourth Amendment excessive force claim against Defendant Cook for his conduct when he slammed the Plaintiff into the glass window and onto the floor and then punched him in the face during the booking process at the East Chicago Police Department on January 20, 2021. The Fourth Amendment prohibits the use of excessive force by a police officer during an arrest. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989); U.S. Const. amend.

IV. The Fourth Amendment's objective reasonableness standard governs claims of excessive force by a police officer. *Graham*, 490 U.S. at 388. "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest." *Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021) (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012)). The totality of the circumstances considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Turner v. City of Champaign*, 979 F.3d 563, 567 (7th Cir. 2020) (quoting *Graham*, 490 U.S. at 396). "An officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest, . . . circumscribed by the Fourth Amendment's insistence on reasonableness." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (citing *Graham*, 490 U.S. at 396). The objective reasonableness of an officer's use of force is a legal determination for the court on summary judgment. *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007); *Phillips*, 678 F.3d at 520. But the Court "defer[s] to a jury's determination of what occurred during an arrest or whose testimony is credible." *Phillips*, 678 F.3d at 520.

"[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. Thus, courts must consider the facts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citation omitted). Notably, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (cleaned up). Importantly, "the question is whether the officer's actions are 'objectively reasonable' in

light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citations omitted).

In the instant motion, Defendant Cook argues that the force he used on the Plaintiff in the police station was objectively reasonable under the circumstances. But Defendant Cook and the Plaintiff tell vastly different stories about the events that led to the use of force, and Defendant Cook cites only the facts he has presented in support of his use of force. Viewing the facts in the light most favorable to the Plaintiff, there is a genuine dispute of material fact whether the Plaintiff was doing anything more than passively resisting prior to Defendant Cook's use of force. The Plaintiff was handcuffed, facing a glass partition inside the police station, and surrounded by three armed officers, one of whom had a TASER pointed at him. The Plaintiff was "not even moving a muscle" when Defendant Cook slammed his face into the glass partition and took him to the ground. The Plaintiff denies that he was physically resisting Defendant Cook or making any verbal threats to Defendant Cook at any point from his arrest to and during the booking process. Although the Plaintiff admits that he had some beers prior to his arrest and was "tipsy," he denies that he was intoxicated.

"[U]sing a significant level of force on a non-resisting or a passively resisting individual constitutes excessive force." *Alicea v. Thomas*, 815 F.3d 283, 292 (7th Cir. 2016) (citing *Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995)); *Phillips*, 678 F.3d at 525–27 (describing a willful refusal to obey a police officer's order as "passive resistance" warranting only a minimal use of force). While the incident that led to the Plaintiff's arrest involved an accusation of the Plaintiff barricading himself in a house and attacking his girlfriend with knives and a torch, once arrested, the Plaintiff did not actively resist or threaten the officers in any way. Defendant Cook used not only his hands and body to gain control of and secure the Plaintiff, who was not resisting, but also used the glass wall, the floor, and his fist, resulting in the Plaintiff's broken jaw. Viewing

the facts in the light most favorable to the Plaintiff, a reasonable jury could find that it was not objectively reasonable for Defendant Cook to use that amount of force under the totality of the circumstances. *See Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009) (explaining that summary judgment in excessive forces cases is often denied because "parties typically tell different stories about what happened").

The video recording of the time before, during, and after Defendant Cook's use of force does not clearly establish that the use of force was objectively reasonable. There is no audio with the video recording, and it is not clear from the video that the Plaintiff was tensing his muscles in response to Defendant Cook's direction to place his hand on the glass or was otherwise actively resisting. *See Kailin v. Village of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023) (recognizing that "a video record of the events at issue can evaporate any factual dispute that would otherwise exist" but also that the video evidence can only eliminate a factual dispute when it "is so definitive that there could be no reasonable disagreement about what the video depicts" (cleaned up)).

The Court notes that both Defendant Cook and the Plaintiff offer the conflicting testimony of other members of the East Chicago Police Department regarding the reasonableness of Defendant Cook's use of force. And the Plaintiff further offers the expert opinion of Harry McCann Jr. on the reasonableness of Defendant Cook's conduct. This additional evidence further underscores the dispute of material fact that precludes summary judgment.

For these reasons, the Court denies the motion for summary judgment on the § 1983 Fourth Amendment excessive force claim against Defendant Cook.

b) Qualified Immunity

Defendant Cook asserts that he is entitled to qualified immunity on the Plaintiff's § 1983 Fourth Amendment excessive force claim. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017)). Thus, the two questions are "whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted).

Because there is a genuine dispute of material fact whether there was a Fourth Amendment violation, the Court must consider whether the Plaintiff has shown that the right was clearly established. To overcome the burden, "[t]he clearly established right must be defined with specificity." *Smith v. Finkley*, 10 F.4th 725, 742 (7th Cir. 2021) (quoting *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019)). Courts look to "whether precedent squarely governs the facts at issue." *Id.* Thus, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established" and the test is "whether the law was clear in relation to the specific facts confronting the public official when he acted." *Kemp v. Liebel*, 877 F.3d 346, 351–52 (7th Cir. 2017) (citations omitted).

As argued by the Plaintiff, it was clearly established in January 2021 that "using a significant level of force on a non-resisting or a passively resisting individual constitutes excessive force." *Alicea*, 815 F.3d at 292 (citing *Rambo*, 68 F.3d at 207); *see Phillips*, 678 F.3d at 525–27). Again, viewing the facts in the light most favorable to the Plaintiff, the Plaintiff did not verbally assault or threaten Defendant Cook at time during his arrest, transport, or booking and did not physically resist or physically disregard the instructions of Defendant Cook or any other officer while being booked at the station. A reasonable officer in January 2021 would have understood that grabbing a handcuffed, non-threatening detainee who was not physically resisting by the neck, slamming his face into a glass wall, taking him to the ground, and

punching him in the head was unlawful. Therefore, Defendant Cook is not entitled to qualified immunity on the facts before the Court.

c) *Heck* Doctrine

When a person convicted of a crime brings a § 1983 action for damages, "a district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). "[A] § 1983 action is barred under *Heck* where the fact of a Fourth Amendment violation is an element of the offense of conviction." *Pyles v. Strebing*, No. 24-1797, 2025 WL 2083900, at *2 (7th Cir. July 24, 2025) (citing *Heck*, 512 U.S. at 486–87 n.6).

Defendant Cook invokes *Heck* to argue generally that the Plaintiff's plea of guilty in the state domestic battery case precludes his claim in this case because the Plaintiff's claim in this case tends to challenge the legality of his conviction. As argued by the Plaintiff, the *Heck* doctrine has no applicability to his § 1983 Fourth Amendment excessive force claim against Defendant Cook because nothing in either the plea or the factual basis of the plea in the state case for domestic battery by means of a deadly weapon and criminal confinement, which were related to his conduct with his girlfriend, references conduct by the Plaintiff at the East Chicago Police Department station, sally port, or booking area. The Plaintiff's excessive force claim in this case is unrelated to whether there was probable cause for the Plaintiff's arrest for domestic battery; the Plaintiff was not arrested for assault on an officer in relation to the events at the station. *See, e.g.*, *Hill v. Murphy*, 785 F.3d 242, 245 (7th Cir. 2015) (finding that a claim that officers used excessive force and detained the plaintiff illegally would not undermine related convictions for attempted extortion and making false statements such that the claims were not barred by *Heck*).

In contrast, *Heck* bars the Plaintiff's § 1983 Fourth Amendment false imprisonment claim against Defendant Cook. Although the Complaint does not allege any facts in support of the § 1983 false imprisonment claim and the Plaintiff does not offer any argument or facts to support this claim in response to summary judgment, the title of Count I of the Complaint states the § 1983 excessive force claim includes false imprisonment. Defendant Cook is correct that *Heck* bars any such claim because the domestic battery incident for which he was arrested, pled guilty, and was incarcerated for eighteen months is the same incident for which he was detained by Defendant Cook. A verdict in favor of the Plaintiff in this case on a false imprisonment claim against Defendant Cook for the Plaintiff's arrest and detention on those charges would challenge the validity of his state court conviction, which he has not shown has been invalidated. Therefore, the Court grants Defendant Cook's motion for summary judgment on the Plaintiff's § 1983 Fourth Amendment false imprisonment claim based on the Plaintiff's arrest for the state offenses.

*2. State Law Claims of Assault, Battery, and False Imprisonment*

Count I of the Complaint is titled: "Count I–Excessive Force by Defendants In their Individual Capacities by Way of 42 U.S.C. § 1983 to Include Assault, Battery, Excessive Force & False Imprisonment." Compl. 3. However, the Complaint does not invoke Indiana state law or assert this Court's diversity jurisdiction under 28 U.S.C. § 1332 or its supplemental jurisdiction under 28 U.S.C. § 1367. Nevertheless, Defendant Cook moves for summary judgment on any claims of assault, battery, and false imprisonment that sound in Indiana tort law based on the wording of the title of Count I. In response, the Plaintiff contends that he is not bringing any Indiana state law claims and that his "claim for assault and battery are tied to his federal excessive claim." Pl. Resp. 13, ECF No. 61. He also asserts that the lawfulness of his initial

arrest is not at issue. *Id.* 14. Accordingly, the Court grants the Defendants' Motion for Summary Judgment on any Indiana state law claims of assault, battery, or false imprisonment.

### B. Claims Against Defendants Assistant Chief of Police Rivera and Chief of Police Rosario

Count II of the Complaint is titled "Failure to Train and Supervise by Defendants Rivera and Rosario Pursuant to 42 U.S.C. § 1983," and the claims are brought against them in their individual capacities only. The Plaintiff alleges that Defendants Rivera and Rosario "knew or should have known that Defendant Cook exhibited a pattern of escalating encounters with the public to include Cook having engaged in excessive force against citizens, prior to conduct for which Plaintiff complains." Compl. 6. The Plaintiff alleges that Defendants Rivera and Rosario failed to supervise and train Defendant Cook, causing the Plaintiff to suffer the use of excessive force on January 20, 2021. *Id.*

Defendants Rivera and Rosario move for summary judgment on this claim, citing Indiana law. In response, the Plaintiff offers no law in support of these claims but argues that Defendants Rivera and Rosario were "deliberately indifferent or on notice of any risk that Officer Cook would use excessive force" and that they failed to respond to Defendant Cook's conduct on January 20, 2021. Pl. Resp. 14–15. Regardless of whether the state or federal standard is applied, summary judgment for these Defendants is appropriate.

Under Indiana law, "an employer has a duty to exercise reasonable care to control his employee to prevent harm against a person, but this duty exists only if the employer '(i) knows or has reason to know that he has the ability to control his [employee], and (ii) knows or should know of the necessity and opportunity for exercising such control.'" *Zander v. Orlich*, 907 F.3d 956, 961 (7th Cir. 2018) (quoting Restatement (Second) of Torts § 317). Foreseeability is

essential in determining whether the general duty applies in a particular scenario. *Id.* (citing *Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016)).

Individual liability under § 1983 requires that the individual be personally involved in the alleged constitutional violation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (quoting *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)). Thus, a supervisor must be personally involved in the constitutional violation to be liable based on a theory of supervisory liability. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (citing *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012)). Accordingly, "the supervisor 'must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see.'" *Id.* (citing *Matthews*, 675 F.3d at 708). Notably, the Plaintiff has not brought a § 1983 *Monell* claim against either defendant in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (explaining that a § 1983 suit brought against an officer in his official capacity is a suit against the government entity for which he works).

The Plaintiff has offered no evidence that either Defendant Rivera or Defendant Rosario knew or should have known *prior* to January 20 2021, that Defendant Cook would engage in an unconstitutional use force. The Plaintiff's evidence regarding whether and to what extent these Defendants investigated Defendant Cook's January 20, 2021 use of force *after* the incident occurred, without more, does not inform the question of their knowledge prior to the incident. There is no genuine dispute of material fact for the jury on this claim. Accordingly, the Court grants summary judgment in favor of Defendant Rivera and Defendant Rosario on the Plaintiff's claims against them.

**CONCLUSION**

For the reasons set forth above, the Court hereby GRANTS in part and DENIES in part the Defendants' Motion for Summary Judgment [ECF No. 50]. The Court (1) GRANTS the

motion for summary judgment in favor of Defendant Kayvionne Cook on the § 1983 Fourth Amendment false imprisonment claim and the Indiana state law claims of assault, battery, and false imprisonment in Count I; (2) GRANTS the motion for summary judgment in favor of Defendants Jose Rivera and Hector Rosario on all claims against them in Count II; and (3) DENIES the motion for summary judgment on the § 1983 Fourth Amendment excessive force claim against Defendant Cook in Count I.

Thus, the case remains pending on the Plaintiff's § 1983 Fourth Amendment excessive force claim against Defendant Kayvionne Cook only.

Pursuant to 28 U.S.C. § 636, this case is REFERRED to Magistrate Judge John E. Martin for the purpose of holding a settlement conference.

SO ORDERED on October 5, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT